C. W. JONES, Complainant, v. HERBERT LEON BOZĚMAN et al., Defendants. —321 S. W. (2d) 832.

Eastern Section.   September 10, 1958.

Certiorari denied by Supreme Court December 12, 1958.

Ailor & Ailor, Knoxville, for appellant.

Hodges & Doughty, Knoxville, for appellees.

CARNEY, J.  The complainant, C. W. Jones, a former sheriff of Knox County, Tennessee, appeals from a decree of the Chancery Court of Knox County dismissing his original bill.  The defendants, Herbert Leon Bozeman and Earl R. Merritt, were deputy sheriffs serving

under appointment of the complainant, C. W. Jones, and the United States Fidelity & Guaranty Company was surety on their respective indemnity bonds in the amount of $10,000 each payable to C. W. Jones, sheriff of Knox County.

The bonds were identical and each guaranteed that the deputy would faithfully execute the office of deputy sheriff to the best of his knowledge and ability and agreeably to law.

Paragraph II of said original bill is as follows:

"Complainant would now show unto the Court that on or about the 23d day of September, 1950, while said bonds were in full force and effect, and while said Herbert Leon Bozeman and Earl R. Merritt were duly qualified and acting Deputy Sheriffs, and while acting in concert with one William Henry Clift another Deputy Sheriff in pursuing an automobile driven by one Harold Dean Abner for the purpose of arresting said Harold Dean Abner, and possibly other occupants of said automobile, carried on said pursuit in an unlawful manner and in such manner as to render the complainant liable in damages resulting from such unlawful actions of said Herbert Leon Bozeman and Earl R. Merritt, who were acting in their official capacities as Deputy Sheriffs at the time. As a result of the unlawful and negligent conduct of said deputies seven suits were instituted in the Second Circuit Court of Knox County, Tennessee, on March 8th, 1951, and after a trial of the same judgments aggregating Thirty Thousand Dollars were entered in same as follows:

| | | |
|---|---|---|
| Hattie Coffey, Admr. | No. 15,545 | $5,000.00 |
| T. H. Morrison | No. 15,546 | 2,500.00 |
| Roxie Davis | No. 15,547 | 5,000.00 |
| Ralph Davis | No. 15,548 | 6,000.00 |
| T. M. Morrison | No. 15,549 | 1,500.00 |
| J. D. Abner, Admr. | No. 15,550 | 5,000.00 |
| Elmore E. Byerly, Admr. | No. 15,551 | 5,000.00 |

"Said judgments were entered against your complainant and the surety on his official bond, Standard Accident Insurance Company. And the same were affirmed on appeal to the Court of Appeals of Tennessee, and writ for certiorari was denied by the Supreme Court. Said judgments with costs and interest were paid on January 19th, 1953 by Standard Accident Insurance Company, and judgment over against your complainant was entered in the Second Circuit Court of Knox County, Tennessee, on the ———— day of March, 1953, in the amount of $21,-621.70 in favor of said Standard Accident Insurance Company.

"Your complainant is advised that the conditions of said bonds have been breached, and that he is entitled to recover thereon; that demand has been made upon United States Fidelity & Guaranty Company to comply with the provisions of said bonds and pay according to the terms of same, but that it has refused and neglected to pay, and that its failure and refusal to pay is without any just cause or reasonable excuse. Said bonds were given for the express purpose of protecting your complainant from liability by reason of the negligent or wrongful conduct of said Herbert Leon Bozeman and Earl R. Merritt as Deputy Sheriffs, and the judgments which have

been entered against him as above set out operated as a breach of the same and matured his right to maintain this suit."

The defendants, Bozeman, Merritt and United States Fidelity & Guaranty Company filed a number of dilatory pleadings including the statute of limitations. All of. these were overruled. See Jones v. Bozeman, 196 Tenn. 633, 270 S. W. (2d) 185.

Finally they filed a joint answer admitting the execution of the bonds, the institution of the suits and the finality of the seven judgments as alleged in the original bill.

In their answer the defendants set out and relied upon the following defenses: (1) They denied that the final judgments in Circuit Court constituted a breach of their bond; (2) They denied that any act or omission of either of the defendant deputy sheriffs cast the complainant, C. W. Jones, or his surety, Standard Accident Insurance Company, with liability; (3) They averred that the accident and injuries resulting therefrom to the several plaintiffs were in no manner the result of any negligent, wrongful or unlawful act of the defendants, Herbert Leon Bozeman, Earl R. Merritt and/or William H. Clift, another deputy sheriff who was not a party defendant to the present action; (4) They averred that these defendants in the present cause were not parties defendant to the several suits in the Circuit Court of Knox County; that they had no control over the litigation in the Circuit Court; that they were not represented in said litigation and the two defendants, Bozeman and Merritt were never offered as witnesses in the trial of the several lawsuits; (5) They averred that the complainant, C. W.

Jones, and the surety, Standard Accident Insurance Company, elected to defend the several suits in Circuit Court upon legal and technical defenses going only to the sufficiency of the pleadings and failed to introduce evidence which they had available and which these defendants averred would have been sufficiently cogent to result in a verdict against the plaintiffs in the several suits.

Upon the trial of this case before the Chancellor the complainant, C. W. Jones, introduced no evidence showing the circumstances under which the several plaintiffs sustained their injuries and no evidence tending to show that the acts of defendants, Bozeman and Merritt, caused the plaintiffs' injuries. Nor did complainant introduce any evidence tending to show that the defendants had breached their bonds but he insisted that the judgments in the Circuit Court cases were conclusive as to the breach of the bonds.

Instead the complainant's proof was limited to showing that the defendants, Bozeman and Merritt, were fully apprised of the pendency of said several suits and that the law firm of Hodges and Doughty of Knoxville, Tennessee, which represented the United States Fidelity & Guaranty Company, surety on the deputies indemnity bonds, participated in at least two pre-trial conferences concerning the defense to the seven lawsuits in Circuit Court.

The Chancellor found that the defendants, Bozeman and Merritt, and their surety, the United States Fidelity & Guaranty Company, were fully apprised of the pendency of the several suits in the Circuit Court of Knox County; that no question of notice was involved; and

that the United States Fidelity & Guaranty Company was represented in pre-trial conferences by the law firm of Hodges and Doughty of Knoxville, Tennessee.

The Chancellor found further that none of the defendants in the present cause were ever requested or permitted to defend the cases in Circuit Court; that two conferences were held regarding the defenses to the cases in Circuit Court and that the firm of Hodges and Doughty, representing United States Fidelity & Guaranty Company did not share the enthusiasm of Judge Ailor, counsel for Jones and Standard Accident Insurance Company, in relying wholly upon a legal defense and in not fully investigating and following up by discovery the evidence available.

The Chancellor held that the defendants had never been given an opportunity to appear and defend the charges that they had breached their bond and that therefore, the judgments obtained by the plaintiffs in the Circuit Court of Knox County against the defendant, C. W. Jones, Sheriff, and his surety were not conclusive in the present litigation between the sheriff and the deputy sheriffs in the action upon their official bonds and that in order for the sheriff to prevail it was necessary that he prove that the defendants breached their official bond.

Further the Chancellor held that in the present cause the complainant had produced no evidence to show that the defendants had breached their bond and that the averments of the defendants in their answer were sustained by the proof. Hence a judgment was entered in favor of the defendants and dismissing the complainant's bill.

By assignments of error 1, 2, 3, and 4 the appellant, C. W. Jones, insists that His Honor the Chancellor was

in error in holding that the defendants herein were not bound by the judgments in the Circuit Court and that the complainant, C. W. Jones, was required to prove a breach of the defendants' indemnity bonds by specific evidence in the present case.

It is the contention of the appellant, C. W. Jones, on this appeal that the indemnity bonds of the two deputy sheriffs were broken upon the entry of the judgments against the sheriff; that ample and timely notices of the pendency of said seven suits were given to defendants and their attorneys and that they actively participated in preparing defense to said suits and approved every step taken therein and were bound by the judgments rendered in said suits. It is further the contention of appellant that the defendants had a reasonable opportunity to make defense in said seven suits if they had desired to do so.

The salient facts relating to the unfortunate occurrence which gave rise to the seven lawsuits in the Circuit Court are as follows:

On the night of September 23, 1950, Deputies Bozeman and Clift were on duty riding in a patrol car furnished by the sheriff's office with Officer Clift driving. Deputy Clift is not a party to this suit.

Pursuant to a call from the jail they went by the home of Deputy Earl Merritt and picked him up and were on the way to the County Jail of Knox County where Deputy Merritt was to go on duty at 10:00 P.M. While on the way they received another call by radio to investigate a disturbance somewhere near Emory Road in Knox County concerning a parked car. The present complainant, Sheriff Jones, came to the scene of this investigation

at which time they received another call by radio to investigate a disturbance on Cement Plant Road.

Deputy Clift and Deputy Bozeman accompanied by Deputy Merritt, with the knowledge of Sheriff Jones, proceeded to investigate the second call. Officer Clift was driving, Officer Merritt was in the middle and Officer Bozeman was on the right or outside. All three were in the front seat of the patrol car. Officer Merritt was manning the short-wave radio. They located the cause of the disturbance as being a 1947 Mercury containing several teen-age boys of which at least one named Byerly appeared to be somewhat drunk. After admonishing the boys against further disturbance the officers advised them to go home without arrest which they all agreed to do except the Byerly boy who was sarcastic and reluctant.

The teen-agers all got in the 1947 Mercury with one Abner at the wheel. They left at a very high rate of speed calling out to the officers in substance, ''See if you sonofabitches can catch us.''

The officers followed in close pursuit and the 1947 Mercury was travelling at a high rate of speed through highly congested districts. Mr. Bozeman testified that at times their patrol car reached speeds of eighty to eighty-five miles per hour and were never able to catch the Mercury.

The chase extended for several miles and ended with the 1947 Mercury leaving the road and crashing into a tree killing three of the occupants and severely injuring the others. Sheriff Jones was in communication with the patrol car by radio during the course of the chase.

At some time before the chase ended Deputy Bozeman pulled his .38 caliber revolver and fired two shots. Ac-

cording to the testimony of Mr. Bozeman and one of the other deputies in the car he fired directly into the ground and neither of the shots could have struck the 1947 Mercury. However, in the trial of the suits in Circuit Court it was the theory of plaintiffs that Deputy Bozeman had shot into the tire of the speeding Mercury and caused it to leave the road and strike the tree.

Deputies Bozeman, Clift and Merritt all contended that the shots were fired by Deputy Bozeman two miles from the scene of the collision.

After the collision and after it became apparent that probably lawsuits would be filed as a result of the deaths and injuries sustained in said collision, an independent investigative agency was employed jointly by the Standard Accident Insurance Company, insurer on the sheriff's bond and the United States Fidelity & Guaranty Company, insurer on the indemnity bonds of Deputies Merritt and Bozeman.

The statements of Deputies Bozeman, Clift and Merritt as to the circumstances of the pursuit and collision were given to the investigating agency and of course made available both to the United States Fidelity & Guaranty Company and to the Standard Accident Insurance Company. There was never any question as to the position and contention taken by Deputies Bozeman, Merritt and Clift that they did not shoot into the tire of the 1947 Mercury and that they were in no manner the cause of said collision.

In time seven separate suits were filed in the Circuit Court of Knox County. Each suit was brought upon the official bond of Sheriff Jones and he and his surety, Standard Accident Insurance Company, were named as

defendants in each suit. None of the three deputies were named as defendants in the suits in Circuit Court.

After the investigation and before trial at least two pre-trial conferences were held in the office of Sen. Wayne Parkey, attorney of Knoxville, Tennessee, general counsel for the Standard Accident Insurance Company. In attendance at these conferences were Mr. Parkey, Mr. Paul Clark, general manager of the Standard Accident Insurance Company, Sheriff Jones, Mr. Thurmond Ailor, attorney of record for Sheriff Jones and for the Standard Accident Insurance Company. Also attending the conference was a member of the law firm of Hodges & Doughty representing the United States Fidelity & Guaranty Company. At the time of these conferences neither Bozeman nor Merritt were represented by an attorney.

The purpose of the conferences was to determine the best method of handling the defense to these seven lawsuits.

Judge Ailor felt that the lawsuits could be won upon a fatal defect in the declarations because they alleged that the action of the deputies were done under "color of their said offices" rather than "by virtue of their office." Judge Ailor relied primarily upon the case of Ivy v. Osborne, 152 Tenn. 470, 279 S. W. 384. It was Judge Ailor's opinion that it was best not to introduce any evidence on behalf of the sheriff or the bonding company and not to introduce the testimony of the deputies who were riding in the patrol car in pursuit of the speeding teen-agers.

According to the evidence in the present case Sheriff Jones had visited the scene of the accident and observed

that all four tires on the Mercury which had crashed into the tree were inflated and that hence none of them had been struck by either of the bullets fired from Deputy Bozeman's pistol.

The Mercury automobile was removed to Farmer's Garage. Sometime later Mr. Farmer, the owner of the garage, and the County Coroner, Mr. Wolfenbarger, removed the right rear tire which had blown out in bringing the wrecked car to the garage and after a complete examination of the tire and tube found no evidence of bullet holes in the tire or tube and found no bullets in the tire or tube.

Several days later a relative of one of the plaintiffs visited the garage and in the course of inspection of the right rear tire of the 1947 Mercury a bullet fell out of the tire. It was the theory of Mr. Doughty, attorney for United States Fidelity & Guaranty Company, that the bullet had been planted in the tire by some unscrupulous person after the wrecked Mercury had been brought into Farmer's Garage.

In the conference Mr. Doughty expressed doubt as to the wisdom of relying solely upon the technical defenses suggested by Judge Ailor. His thought was that probably the defense should introduce its evidence showing how the collision occurred and that in addition a ballistics test should be taken of the bullet which was then in the possession of the plaintiffs. Upon his suggestion a petition for discovery of the bullet was filed but because the petition was filed less than five days before the trial the Trial Judge denied the petition. Later during the course of the trial the Trial Judge, while refusing to allow the bullet to be removed for a ballistic test, yet he

did authorize the defendant Jones to have the bullet weighed in the courtroom. This was not done because the defendants had elected not to offer any proof at all in their defense.

The case went to the jury without a ballistic test being taken and without any evidence being submitted on behalf of the defendants with final verdicts in favor of the plaintiffs as above set out.

Upon the trial of this case in the Chancery Court the defendants, Merritt and Bozeman, introduced the testimony of Captain Ireland of the police force of the City of Knoxville and also Mr. Kimsey, Chief of Police of the City of Knoxville. These two gentlemen testified that they had examined the bullet which was introduced in evidence by the plaintiffs in the trials in Circuit Court as the bullet which fell out of the tire of the 1947 Mercury automobile in Farmer's Garage. Both of these gentlemen as experts testified that the bullet appeared to be a .32 caliber bullet and that it was not a .38 caliber bullet. This proof of course corroborated the contention of Bozeman and Merritt that Deputy Bozeman did fire his .38 caliber revolver into the ground and that neither of the bunllets fired by him struck the tire of the speeding 1947 Mercury.

From our review of the evidence we concur in the finding of His Honor the Chancellor that none of the three defendants, Bozeman, Merritt and United States Fidelity & Guaranty Company was ever requested to defend the cases in Circuit Court. We also concur with the finding of the Chancellor that there is no proof in the record in this cause that the Deputies Bozeman and Mer-

ritt or either of them committed any act constituting a breach of their respective official bonds.

■ Therefore in order for the complainant, C. W. Jones, appellant herein, to prevail it is necessary for us to sustain his contention that the final judgments against the sheriff and the surety on his official bond in the Circuit Court were conclusive in this case on the issue of breach of the official bonds by these two Deputies, Bozeman and Merritt.

In deciding this question adversely to the contention of complainant His Honor Chancellor Dawson quoted from an early Tennessee case of Stephens v. Jack, 1832, 11 Tenn. 403, as follows:

"It is an elementary principle of justice, that no one ought to be bound, as to matter of private right, by a judgment or verdict to which he was not a party, where he could make no defense, from which he could not appeal, and which may have resulted from the negligence of another, or may have even been obtained by means of fraud and collusion."

Also from the Chancellor's opinion we quote as follows:

"There are numerous other cases in Michigan, Massachusetts, and Virginia which lay down the same principle that the indemnitor must be given an opportunity to appear and to participate in the defense of the suit and that it is not enough that the indemnitor be advised or know of the facts and circumstances relating to the suit which has been instituted. The reason behind the holdings of these various Courts is summed up in the case of Seat v. Cannon, 20 Tenn. 471, as follows:

" 'It is a well settled principle of law that no one who is not a party or in the relation of a representative of a party, is estopped from enquiring into the merits of a judgment by which his rights are sought to be affected, for the plain and common sense reason that he shall not be judged without being heard. And surely no one can complain of this. It is not enough that the plaintiff has obtained a judgment by the neglect or ignorance of the parties thereto, by which they are estopped and made liable for what they did not owe, without seeking thus to affect the innocent third persons who are no parties to the proceeding.' 20 Tenn. 472.

"See Restatement of the Law Judgments, Chapt. 4, Sec. 7, Sub-Sec. E, as follows:

" 'In order to bind the indemnitor in a subsequent action against him, the indemnitor is not obliged necessarily to surrender the entire control of the defense; he must, however, request the indemnitor to participate, and if judgment is given against the indemnitee he must permit the indemnitor to take appellate proceedings.' "

The appellees also cite the case of Carter v. E. T. & W. N. C. Transp. Co., Inc., 1949, 35 Tenn. App. 196, 243 S. W. (2d) 505. In discussing the right of a joint tort-feasor who has made a compromise of a claim to recover contributions from his cotort-feasor, this court, eastern section, through Judge Hale, 35 Tenn. App. at page 202, 243 S. W. (2d) at page 507, said as follows:

" '* * * Unless a statute requires it, one of several tort-feasors who have incurred a common liability need not wait until the injured person obtains a

judgment against him or even until suit is brought, but he may, in good faith, enter into a compromise with the injured person and satisfy the entire liability on the basis of the amount so fixed, without assuming the character of a volunteer or endangering his right to contribution. However, if the alleged cotort-feasor from whom contribution is sought is not a party to the compromise and settlement, he is not bound thereby. Such compromise and settlement will not deprive him of a trial by jury, either as to the fact of his own liability for the injury to the person wronged or as to the actual amount of the damages which arose from the tort, but if the payment was made in good faith, in pursuance of a compromise made honestly and in good faith, the amount thus paid will be regarded as prima facie correct.'

''As has been noted, the defendant obtained a jury trial in the instant case upon the question of his negligence and upon the reasonableness of the amounts paid in compromise, thus fully protecting his rights.''

We think also two separate quotations from American Jurisprudence are applicable:

27 Am. Jur.—Indemnity—p. 478—Section 35.

''Conclusiveness of Judgment Recovered against Indemnitee—It is a well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclu-

sive against him, whether he appeared or not. This principle finds frequent application in the case of indemnitors or persons primarily liable for a wrong for which another has been compelled to pay.''

30 Am. Jur.—Judgments—p. 472—Section 417.

''Notice and Opportunity to Defend—The doctrine of conclusiveness of judgments as against persons liable over to the judgment debtor has been held or declared to be applicable where the former were duly given notice of the pendency of the action in which the judgment was rendered and had an opportunity to defend, and not to be applicable where the person ultimately responsible was not given such notice and such opportunity to defend. The effect of the omission of such notice and opportunity is that the judgment is not binding on the person liable over, who has a right to litigate again every essential fact necessary to support the judgment. However, there may be cases where a person expressly agrees to become responsible for the result of a litigation, or where such a responsibility is cast upon him by operation of law without an agreement, and where the doctrine of conclusiveness of judgments against persons liable over is held to be applicable in the absence of notice of the action in which the judgment is rendered.

''Parties responsible over are no longer 'vouched' in as parties of record. Instead they are notified to defend, which long ago superseded the technical voucher.''

See also 34 A. L. R. 1429 et seq.

It appears to us from the record in the present case that the surety of the two deputies, Bozeman and Merritt, the United States Fidelity & Guaranty Company, had full and complete notice of the pendency of the suits in Circuit Court, was fully advised by the solicitor for Sheriff Jones and his surety of all developments in the cases, but at all times the solicitor for the Sheriff and his surety was in full charge of the litigation. The deputies and their surety were never asked to defend the suits, were never offered the permission to defend the suits and no notice was ever given to the deputies or their surety that any judgments rendered against the Sheriff and his surety in the Circuit Court would be conclusive as against said deputies and their surety.

Under the authorities quoted above, we feel constrained to agree with the Chancellor that such judgments in the Circuit Court under the circumstances related above were not conclusive against the deputies, Bozeman and Merritt, and their surety, United States Fidelity & Guaranty Company. There being no evidence in this record tending to show that the deputies were guilty of any conduct which operated to breach their bond, His Honor was correct in rendering judgment in favor of the defendants.

Appellant cites and relies upon the case of Atkins v. Scarborough's Adm'r, 28 Tenn. 517. While there is language in the opinion to support the contention of appellant yet a reading of the opinion shows that it really was decided in favor of the deputy sheriff on the statute of limitation and is not controlling of the case at bar.

Appellant also contends that under T. C. A. Sections 25-315 and 25-317 (Williams' Code, secs 9529 and 9531)

complainant, C. W. Jones, Sheriff, was entitled to proceed by motion against the defendant deputies and their surety on their indemnity bonds. He cites the case of Jarnagin v. Atkinson, 23 Tenn. 470, in support of his contention.

If we assume that the complainant, Sheriff Jones, could have proceeded against the deputies by motion under the above sections, it clearly appears that he elected not to do so and instead proceeded by original suit against them in Chancery Court on their indemnity bonds and cannot now rely upon the provisions of the Code Section quoted above. However, it also appears to us that if he had proceeded by motion under the above Code Sections, such course would not have prevented the defendants from setting up as defense thereto, that they had not been parties to the former suits in Circuit Court and had not been asked to or give permission to defend said suits and had never been given an opportunity to litigate the issues of law and fact regarding the alleged official misconduct, the alleged breach of their indemnity bonds and the damages proximately resulting therefrom.

"The remedy given by the statute, by motion is merely a substitute for the more tedious and expensive common-law remedy of an action on the case; consequently, whatever would constitute a valid defence for the officer in an action on the case, ought to be equally available as a defence in the statutory proceeding by motion." Billingsly v. Rankin, 32 Tenn. 82.

Finally by assignment of error No. 5 the appellant insists that since the defendants, appellees, filed a plea of the statute of limitations of one year which was over-

ruled, that such plea in effect admitted the legality of the complainant's claim against them and that therefore they should not be permitted at a later date to "assume a different and antagonistic position to that so taken."

From the plea in abatement of the defendants, Herbert Leon Bozeman, Earl R. Merritt and United States Fidelity & Guaranty Company, filed of date August 4, 1953, we quote as follows:

"Defendants aver that the Complainant's cause of action, if any, accrued more than one year before this action was commenced, and in consequence Complainant's cause of action is barred by the applicable one year statute of Limitations."

We do not think the above language on the part of the defendants in their plea admits the validity of the complainant's claim and we see nothing inconsistent or improper in their denying the claim in detail in their answer after their plea of the statute of limitations had been overruled.

It follows that all of the assignments of error must be respectfully overruled. Decree of the Chancellor will be affirmed in this court and the appellant and surety taxed with the costs.

Avery, P. J. (Western Section), and Bejach, J., concur.